UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JONATHAN HIRSCH,<br>Individually and on behalf of all<br>others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CSX TRANSPORTATION, INC.,<br>　　　　　Defendant. | Civil Action No. _____<br><br>Removed from the<br>Court of Common Pleas<br>Lake County, Ohio |

## NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Please take notice that Defendant CSX Transportation, Inc. ("CSXT") hereby removes this action to federal court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 with full reservation of any and all defenses and objections.

In support of this notice, CSXT respectfully submits as follows:

1.　　On October 11, 2007, named Plaintiff Jonathan Hirsch, on behalf of himself and others similarly situated, filed a Class Action Complaint ("Complaint") against CSXT in the Court of Common Pleas for Lake County, Ohio, Civil Action No. 07-CV-003104.

2.　　CSXT was served with the Complaint on October 18, 2007.

3.　　Removal is timely pursuant to 28 U.S.C. § 1446(b), in that this Notice of Removal is being filed within thirty (30) days of service of the Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

4. In accordance with 28 U.S.C. § 1446(a), copies of all pleadings and orders served upon CSXT are attached as Exhibits 1 and 2.

5. The Court of Common Pleas for Lake County, Ohio is located within the district of the United States District Court for the Northern District of Ohio.

6. As shown below, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that the Plaintiff and the Defendant are of completely diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. As further shown below, this Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), in that the action is a putative class action of at least one hundred proposed class members, the parties are of at least minimally diverse citizenship, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8. By removing the action to this Court, CSXT does not admit any of the facts alleged in the complaint, or waive any defenses, objections, or motions available to it under state or federal law. CSXT expressly reserves the right to challenge the adequacy of the allegations in the complaint. *See Key v. DSW Inc.*, No. 2:06-cv-459, 2006 WL 2794930, at *7 (S.D. Ohio Sept. 27, 2006) ("the fact that Defendant removed the case does not mean that Defendant concedes that Plaintiff has adequately alleged appropriate damages").

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice is being served on Plaintiff, and filed with the court administrator for this Court and with the court in which the State Court Action was filed.

## THIS COURT HAS DIVERSITY JURISDICTION

10. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332. An action may be removed to federal court under Section 1332 where there is complete diversity of citizenship between the parties, and where the requisite amount in controversy exists. *See* 28 U.S.C. § 1332(a); *see also State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967).

### The Parties Are Completely Diverse

11. According to the Complaint, the solitary named plaintiff is a resident of Lake County, Ohio. Compl. ¶ 13.[1]

12. The sole defendant is CSXT. Compl. ¶ 10. CSXT is a Virginia corporation with its principal place of business in the state of Florida.

13. Thus, complete diversity of citizenship exists as between the parties. *See* 28 U.S.C. § 1332(a)(1).

### The Amount in Controversy Requirement Is Met

14. With complete diversity of citizenship established, the remaining question for diversity jurisdiction purposes is whether the $75,000 amount in controversy requirement is satisfied.

15. "[T]he general federal rule has long been to decide what the amount in controversy is from the complaint itself." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961). The Court engages in amount-in-controversy analysis with an eye toward reaching a

---

[1] Unnamed putative class members are not parties for purposes of determining whether complete diversity of citizenship exists. *See Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002).

reasonable reading of the value of the rights being litigated. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

16. Here, the Complaint does not specify an amount of damages sought. In such settings, the removing defendant's burden is to show that the amount in controversy "more likely than not exceeds the jurisdictional requirement." *Chamberlain v. Am. Tobacco Co.*, 70 F. Supp. 2d 788, 801 (N.D. Ohio 1999) (citing *Gafford v. Elec. Co.*, 977 F.3d 150, 158 (6th Cir. 1993)). CSXT need not prove this to a legal certainty; CSXT's burden, instead, is to show that it is more likely than not that the value of the rights being litigated totals at least $75,000. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001); *Firestone Fin. Corp. v. Syal*, 327 F. Supp. 2d 809, 810 (N.D. Ohio 2004).

17. In making this calculation, courts consider, among other things, actual or compensatory damages requested, the value of any request for non-monetary relief, and potential punitive damages. *See Chamberlain*, 70 F. Supp. 2d at 801 (holding that amount in controversy requirement "more likely than not" was met, considering combined claims for compensatory, punitive, and statutory damages, medical monitoring, medical expenses, and unjust enrichment); *see also Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933). Courts may consider jury awards in comparable cases as evidence of the value of the injuries alleged. *See, e.g., Brown v. Jackson Hewitt, Inc.*, No. 1:06-cv-2632, 2007 U.S. Dist. LEXIS 13328, at *17 (N.D. Ohio Feb. 26, 2007) (including "similar verdicts" among evidence defendant could rely upon to demonstrate amount in controversy); *Varga v. Heartland Hospice Servs.*, No. 05-10118, 2007 U.S. Dist. LEXIS 67814, at *20-26 (E.D. Mich. Aug. 27, 2007) (noting that relevant facts in determining amount in controversy "include specific information about the plaintiff's injury… and the size of judgment received by other plaintiffs with similar claims").

18. When determining the amount in controversy for diversity jurisdiction, courts presume that a jury would award the damages sought in the Complaint, unless they may not be awarded as a matter of law on the claims pled. *See Hayes*, 266 F.3d at 572.

19. In this litigation, Plaintiff, Mr. Hirsch, asserts that CSXT is liable to him under Ohio common law theories for harm allegedly caused by the derailment of a train in Painesville, Ohio on October 10, 2007. Plaintiff alleges "physical, mental, and/or other loss or damage and/or... future medical monitoring as a result of... the train derailment, including but not limited to the fumes, smoke, and other evacuations and disruptions resulting from the derailment." Compl. ¶ 15. Plaintiff seeks monetary damages for property damage, business losses, emotional distress, physical injury, and inconvenience, among other alleged injuries. *Id.* ¶¶ 24, 48. Mr. Hirsch also seeks to recover punitive damages and non-monetary injunctive and declaratory relief, including establishment of a home inspection, testing, and remediation program as well as immediate and on-going medical monitoring. *Id.* ¶ 48.

20. Although CSXT disputes Plaintiff's allegations of liability and injury, comparison of his allegations to cases featuring comparable claims demonstrates that juries have awarded damages in such settings in excess of $75,000. *See Prince v. Jordan*, No. 93768 (Ohio Ct. C.P. Lorrain Co. Oct. 23, 2000), 2000 Mealey's Jury Verdicts & Settlements 370 (Aug. 14, 2007) (jury award of $100,000 in compensatory damages for nuisance); *Potter v. Firestone Tire & Rubber Co.*, No. 81723 (Cal. Super. Ct. Monterey County), Mealey's Jury Verdicts & Settlements 53 (Sept. 17, 2007) (jury award of $142,975 for future medical monitoring).

21. Media reports of estimated individual damages from the Painesville derailment have exceeded $75,000 for individual claimants. For example, one business owner estimates his economic loss at $400,000. *See* M. Martin, *Train wreck forces Lake evacuations*, Cleveland

Plain-Dealer, Oct. 11, 2007, at B1, *available at* 2007 WLNR 20021263 (Exhibit 3).[2] In his Complaint, Plaintiff claims that his own injuries are representative and typical of such claims. Compl. ¶¶ 3-5.

22. In addition to compensatory damages, the Complaint seeks to have CSXT establish, administer, and fund a property and soil inspection and testing program, as well as to provide immediate and future medical monitoring "because of exposure to the smoke and fumes." Compl. ¶ 48.

23. Where a plaintiff seeks both monetary and injunctive relief (as, in this case, the requests for inspection and medical monitoring programs), this Court may consider either the value of the plaintiff's requested relief or the cost that will be incurred by the defendant if an injunction is granted. *E.g, Crosby v. Am. Online, Inc.*, 967 F. Supp. 257, 264 (N.D. Ohio 1997) ("This court finds the either-viewpoint test to be the appropriate rule for determining the amount-in-controversy in class actions seeking both monetary and injunctive relief...."). Both environmental property monitoring and medical monitoring are programs with significant transaction costs. *See* Affidavit of Paul Nony, Ph.D. ¶ 10 (Exhibit 4). As such, CSXT's costs in establishing, administering, and running the inspection and monitoring programs pled will be substantially the same regardless of the ultimate number of plaintiffs. While, for jurisdictional purposes, injunctive relief is often valued on a pro-rata basis as to each individual plaintiff, *id.* at 265, where, as here, the cost incurred by the defendant will be substantially the same whether there is one plaintiff or many plaintiffs, the jurisdictional amount in controversy is met where the

---

[2] A court may take judicial notice of newspaper articles for the fact of their publication and may refer generally to matters of public record. *See, e.g., Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (citations omitted); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

total cost to the defendant exceeds $75,000. *Schweinfurth v. Motorola, Inc.*, No. 1:05CV024, 2005 WL 2233258, at *3 (N.D. Ohio Sept. 9, 2005).

24. The cost to CSXT of administering a program of property inspection, testing, and environmental remediation would be substantial. *See* Nony Affidavit, ¶ 11 (cost, in publicly available study, of home environmental inspection and testing for chemical contamination totaled more than $15 million for 695 homes).

25. Indeed, the cost of the Complaint's requested medical monitoring program would, alone, satisfy the amount in controversy requirement. Where individual class representatives seek medical monitoring as part of their class action complaint, the appropriate valuation of the medical monitoring claim for amount-in-controversy purposes is the cost of the entire class-wide medical monitoring program. *See Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 U.S. Dist. LEXIS at **13-16 (W.D. Tenn. April 2, 2001) (denying motion to remand medical monitoring class action claims and holding that "the jurisdictional amount in controversy need not be met by the individual Plaintiffs in the present action because the value of the medical monitoring program is well in excess of $75,000").

26. The cost of such a program to CSXT, as pled, would well exceed $75,000. The Complaint asserts that the derailed train cars "were carrying poisonous chemicals or gases such as ethanol, propane, phtalic anhydride and other chemicals...." Compl. ¶ 18. While CSXT denies that any medical monitoring is warranted, the Complaint seeks to require CSXT to establish, administer, and fund a medical monitoring program indefinitely. Such a program, as pled, would entail detailed toxicological assessments of the risks associated with multiple chemicals, both individually and in varying combinations due to varying exposure patterns, followed by on-going screening and treatment of thousands of potential class members

7

indefinitely. As the court held in *Jackson*, "the clerical and administrative costs of such a program alone would certainly exceed $75,000." *Id.* at *14.

27. Dr. Paul Nony of the Center for Toxicology and Environmental Health LLC estimates that the fixed costs associated with the type of medical monitoring plan described in the Complaint "could reasonably be expected to cost $400,000." Nony Affidavit, ¶ 10; *see also id.* ¶¶ 12-13 (providing examples of immediate and on-going medical monitoring costs).

28. Over and above compensatory monetary and non-monetary relief, the Complaint also seeks punitive damages. Compl. p. 8. Unless it is a legal certainty that punitive damages cannot be recovered, punitive damages are considered in calculating the amount in controversy. *Hayes*, 266 F.3d at 572.

29. The Complaint alleges that CSXT engaged in reckless or willful and wanton conduct that resulted in injury to Plaintiff. In Ohio, such claims may, depending on the facts and circumstances, give rise to punitive damages. Awards of punitive damages for comparable claims based on Ohio tort law demonstrate that the punitive damages Plaintiff seeks would more likely than not well exceed $75,000. *See Wightman v. Consol. Rail Corp.*, 715 N.E.2d 546 (Ohio 1999) (affirming jury award of $25 million in punitive damages with remittitur of $10 million for wrongful death and property damage); *Gollihue v. Consol. Rail Corp.*, 697 N.E.2d 1109 (Ohio Ct. App. 1997) (awarding $6 million in punitive damages for property damage, personal injury, and wrongful death); *Wang v. Six Flags, Inc.*, No. 2004-CV-00037 (Ohio Ct. C.P. Portage County Mar. 6, 2006), 2006 Mealey's Jury Verdicts & Settlements 40 (Apr. 5, 2006) (awarding $2.5 million in punitive damages for negligence); *Barnes v. Medlink of Ohio*, No. CV-01-455-448 (Ohio Ct. C.P., Cuyahoga County May 5, 2005), 2005 Mealey's Jury Verdicts & Settlements 24 (June 16, 2005) (awarding $3 million in punitive damages for

8

negligence); *Prince v. Jordan*, No. 93768 (Ohio Ct. C.P. Lorrain County Oct. 23, 2000) (awarding $25,000 in punitive damages for nuisance).

30. So long as one named plaintiff satisfies the amount in controversy requirement, a federal court sitting in diversity jurisdiction may exercise supplemental jurisdiction over additional plaintiffs, including unnamed class members. *Exxon Mobile Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005). As shown above, considering Plaintiff's monetary and non-monetary requests for relief individually and in combination, a reasonable and common-sense reading of the Complaint demonstrates that it is more likely than not that the amount in controversy as to named plaintiff Hirsch exceeds $75,000. This action is thus properly removed pursuant to 28 U.S.C. § 1332.

### THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005

31. Removal is independently authorized under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. §§ 1332(d) and 1453.

32. Under CAFA, a federal court has jurisdiction over a putative class action where the proposed class is greater than one hundred persons, there is minimal diversity between the parties, and the amount in controversy exceeds an aggregate amount of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

33. Plaintiff brings this putative class action on behalf of four subclasses of persons defined as: (1) "All persons, firms, or entities who owned or rented property, within the evacuation zone of approximately ½ mile radius of the [derailment];" (2) "All persons who owned, rented, or resided within the evacuation zone… and who evacuated from the area, were sheltered in place, or were unable to return to their homes;" (3) "All persons who were within one mile of the [derailment];" and (4) "All persons, firms, or entities who operated a business

within the evacuation zone; the closure zone...; or within the shut-off zone." Compl. ¶ 1. The Complaint alleges that each of these four groups numbers in excess of two hundred persons. Compl. ¶ 2. The putative class, as pled, thus consists of more than eight hundred persons.[3]

34. As set forth above, there is complete diversity between CSXT and named plaintiff Jonathan Hirsch. Accordingly, there is minimal diversity between CSXT and the members of the putative class. *See* 28 U.S.C. § 1332(d)(2)(A) (vesting original jurisdiction in federal court where there is minimal diversity such that "any member of a class of plaintiffs is a citizen of a State different from any defendant" and the amount in controversy exceeds $5,000,000).

35. As discussed above, Plaintiff seeks to recover, on behalf of himself and at least eight hundred class members, compensatory and punitive damages as well as declaratory and injunctive relief. Under CAFA, this Court considers whether the value of these claims as to all putative class members in the aggregate exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs."). Given a putative class of at least eight hundred persons, the amount in controversy requirement is satisfied if the putative value of each class member's claim exceeds $6,250.

36. Comparison of this proposed class action to others pleading comparable claims demonstrates that the amount in controversy is more likely than not in excess of an aggregate sum of $5 million. *See In re Miamisburg Train Derailment Litig.*, No. 86-2053 (Ohio Ct. C.P. Montgomery County Oct. 1990), 5 Ohio Trial Rpt. 8 at 349 (class settlement of $16 million

---

[3] Published reports place the number of persons in the proposed class at closer to 1,300. *See, e.g.*, Associated Press, *Train Derailment Fire Burns into 2nd Day*, Oct. 11, 2007 (Exhibit 5) ("residents of about 1,300 households within a half mile of the site in the northeast Ohio town were told to leave their homes").

following train derailment, fire, and community evacuation); *Mehl v. Canadian Pac. Ry. Co.*, No. 02-9 (D.N.D. July 9, 2007), 16 Mealey's Emerg. Toxic Torts 8 at 3 (July 20, 2007) (class settlement of $7 million following train derailment and evacuation); *Sacramento River Spill Cases*, Nos. 2617, 2602 (Cal, Super. Ct. Sept. 17, 1993), 2 Mealey's Emerg. Toxic Torts 13 at 6 (class settlement of $15.5 million following train derailment resulting in spilled chemicals); *In re Train Derailment Near Amite, La. on Oct. 12, 2002*, No. 03-01531 (E.D. La. May 17, 2006), 2006 Mealey's Jury Verdicts & Settlements 2808 (class settlement of $8.275 million following train derailment, spill, and evacuation).

37. Pending before this Court is another putative class action arising from the same set of operative facts and events as the present case, styled *Mann v. CSX Transportation Inc.*, No. 1:07-cv-03194-DAP. The *Mann* complaint proposes a "class consisting of all persons, other than Defendants' employees, who resided, worked, or owned property at any time relevant hereto, or who were present on October 10, 2007, and suffered damages as a result of the explosion and fire from Defendant CSX's train." *Mann* Compl. ¶ 14 (Exhibit 6). Comparing the *Mann* class definition with the *Hirsch* class definition makes plain that the two proposed classes are substantially similar. The *Mann* Complaint similarly seeks compensatory and punitive damages, as well as medical, environmental, and residential property testing and monitoring and additional declaratory and injunctive relief. The specific damages claimed in paragraph 29 of the *Mann* complaint substantially track those claimed in paragraph 24 of the *Hirsch* complaint.

38. Plaintiffs in *Mann* have explicitly claimed that the aggregate value of their injuries "exceeds the sum or value of Five Million Dollars, exclusive of interest and costs." Mann Compl. ¶ 12. Given that both putative class actions arise from the same set of operative facts, propose substantially similar class definitions, and plead substantially similar claims and

damages, the reasonable and common-sense conclusion is that the aggregate amount in controversy in this action more likely than not also "exceeds the sum or value of Five Million Dollars, exclusive of interests and costs."

39. Because there is minimal diversity of citizenship, the aggregate amount in controversy more likely than not exceeds $5,000,000, and the putative class is greater than one hundred persons, this Court has original subject matter jurisdiction over this putative class action.

40. Because subject matter jurisdiction exists under 28 U.S.C. § 1332, this action is removable pursuant to 28 U.S.C. § 1441(a).

41. Because subject matter jurisdiction exists under 28 U.S.C. § 1332(d), this action is also removable pursuant to 28 U.S.C. § 1453.

**WHEREFORE,** CSXT hereby respectfully gives notice that the above action, formerly pending against it in the Court of Common Pleas for Lake County, Ohio, is removed to the United States District Court for the Northern District of Ohio.

November 9, 2007               Respectfully submitted,


/s/ Mary M. Bittence

Mary M. Bittence (0025751)
BAKER HOSTETLER
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114-3485
(216) 861-7361

ATTORNEY FOR CSX TRANSPORTATION, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Notice of Removal has been furnished to the following recipients by U.S. Mail, postage prepaid, this 9th day of November, 2007:

>Patrick J. Perotti
>Nicole T. Fiorelli
>DWORKEN & BERNSTEIN CO., L.P.A.
>60 South Park Place
>Painesville, Ohio 44077

>Michael Jay Leizerman
>E.J. Leizerman
>E.J. LEIZERMAN & ASSOCIATES, L.L.C.
>717 Madison Avenue
>Toledo, Ohio 43604

>/s/ Mary M. Bittence
>_____
>Mary M. Bittence
>Attorney for CSX Transportation, Inc.