**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN HIRSCH, et al.,** | ) | **Case No. 1:07-cv-3512** |
| *Individually and on behalf of all* | ) | |
| *others similarly situated* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **CSX TRANSPORTATION, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court is Defendant CSX Transportation, Inc.'s Motion to Dismiss

Plaintiffs' Second Amended Complaint (ECF No. 32) under Federal Rule of Civil Procedure

12(b)(6) and Motion to Strike under Federal Rule of Civil Procedure 12(f) (collectively

"Motion") (**ECF No. 39**).  For the following reasons, the Motion is **GRANTED IN PART** and

**DENIED IN PART**.

**I.  INTRODUCTION**

On October 10, 2007 at approximately 12:00 p.m., a CSX Transportation

("CSXT" or "Defendant") train headed for Buffalo, New York derailed near Painesville, Ohio.

The train was pulling 112 cars.  Forty cars were loaded with hazardous materials including

ethanol, isobutylene, propane, phthalic anhydride, and liquid petroleum.  Thirty one cars, nine of

which contained hazardous materials, derailed during the incident.  Plaintiffs allege that the

derailment was accompanied by a chemical spill, fire, and rail car explosion, allegedly causing

toxic substances, toxic fumes, and/or carcinogens (collectively "toxic substances" hereinafter) to

be released into the atmosphere, ground and water.

Plaintiffs, on behalf of a putative class comprising those individuals exposed to

the toxic substances, bring causes of action for strict liability, negligence, and medical

monitoring, primarily seeking the establishment of a judicially administered medical monitoring

program, punitive damages and attorney's fees.  Defendant has moved to dismiss all three causes

of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and has

moved to strike Plaintiffs' request for attorney's fees under Federal Rule of Civil Procedure

12(f).  For the following reasons, Defendant's motion is granted in part and denied in part.


## II.  LEGAL STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the

complaint liberally in a light most favorable to the non-moving party.  *Bloch v. Ribar*, 156 F.3d

673, 677 (6th Cir. 1998).  The Court "must accept as true all of the factual allegations contained

in the complaint." *Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007) (*citing Bell Atl.*

*Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (citations omitted)).  *See also*,

*NicSand, Inc. v. 3M Co.*, No. 05-3431, --- F.3d ---, 2007 U.S. App. LEXIS 24270 (6th Cir. Oct.

17, 2007) (en banc) (viewing a complaint "through the prism of Rule 12(b)(6) [requires] us to

accept all of its allegations and all reasonable inferences from them as true") (*citing Mich. Paytel*

*Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002)).  When reviewing a Rule

12(b)(6) motion to dismiss, the Court must "determine whether the plaintiff can prove a set of facts in support of [her] claims that would entitle [her] to relief." *Daubenmire v. City of Columbus*, No. 06-3461, --- F.3d ---, slip op. at 4 (6th Cir. Nov. 6, 2007) (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001)).  In order to preclude dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations which comprise all of the essential, material elements necessary to sustain a claim for relief under some viable legal theory.  *Lewis v. ACB Business Service, Inc.*, 135 F.3d 389, 406 (6th Cir. 1998).


## III.  ANALYSIS

### A.  *Medical Monitoring*

Defendant first asserts that Plaintiffs' medical monitoring claim fails under Ohio law because medical monitoring is not an independent cause of action in Ohio.  They ask the Court not to create a medical monitoring cause of action where one does not exist under Ohio law.

Ohio law recognizes medical monitoring as a form of damages for an underlying tort.  *Wilson v. Brush Wellman*, 817 N.E.2d 59, 63 (Ohio 2004).  In *Wilson*, the Ohio Supreme Court considered a medical monitoring request where plaintiff members of a building and construction union were exposed to beryllium dust and fumes.  *Id.* at 61.  In determining class certification, the court examined whether Plaintiffs' request for medical monitoring was compensatory or injunctive in nature.  *Id.* at 63.  Holding that "[c]ourt supervision and participation in medical-monitoring cases is a logical and sound basis on which to determine whether the action is injunctive," the court evidenced a clear intent to permit medical monitoring

-3-

damage claims to move forward.  *Id.* at 65.

Medical monitoring does not exist, however, as an independent cause of action under Ohio law.  While no Ohio court has upheld or dismissed a medical monitoring claim based on whether it was brought as an independent cause of action, two federal diversity cases, applying Ohio law, have made clear that medical monitoring exists in Ohio only as a form of damages and not as a cause of action.  The first case, *Day v. NLO*, 851 F.Supp. 869 (S.D. Ohio 1994), is cited by Plaintiffs as predicting that Ohio would adopt an independent medical monitoring cause of action.  In *Day*, the district court, in an order delineating the issues to be considered at trial, recognized medical monitoring as a viable form of damages.  Plaintiffs brought suit under Ohio law, asking for medical monitoring due to excessive levels of radiation exposure in a nuclear weapons manufacturing plant.  In allowing for medical monitoring, the court noted that "[r]ecognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort.  It is simply a compensable item of damage when liability is established under traditional tort theories of recovery."  *Id.* at 879-80.  Thus, while *Day* does acknowledge medical monitoring as a form of relief, it most assuredly does not stand for the proposition that Ohio courts would adopt an independent medical monitoring cause of action.

Shortly after *Day*, the court, in *In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203, (S.D. Ohio 1996), acknowledged the *Day* court's treatment of medical monitoring in a motion for class certification.  Plaintiffs brought a products liability action against a pacemaker manufacturer for defective leads.  Recognizing the need for sub-classes of plaintiffs due to differences among state law, the court noted that medical monitoring is "an element of damages rather than an independent cause of action under Alabama, Arizona, Louisiana, Michigan,

-4-

Minnesota, Missouri, New Jersey, *Ohio* and Vermont law." *Id*. at 216 (emphasis added). Because of the differences in state medical monitoring law, the representative plaintiffs from Ohio were not treated as having claims typical of the entire nationwide class. The court held that sub-classes of plaintiffs be created grouping plaintiffs from those states with the same medical monitoring laws together.

*Day* and *Telectronics* both explicitly state that Ohio law recognizes medical monitoring as damages and not as a cause of action. In contrast, Plaintiffs assert that *In re Welding Fume Products Liability Litigation*, 245 F.R.D. 279 (N.D. Ohio 2007), a recent ruling by Judge O'Malley of this Court in an MDL matter, implies that a medical monitoring cause of action may exist under Ohio law. The *Welding Fume* plaintiffs sought "certification of their medical monitoring claims in eight different states" including Ohio. *Id.* at 292. The Court noted that "[t]he parties agree that medical monitoring is recognized in all of these states, and that a plaintiff need *not* manifest a present, physical injury to obtain it." *Id.* (emphasis in original). The Court then cited *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993), as an example of what plaintiffs must prove "to obtain medical monitoring." *In re Welding Fume*, 245 F.R.D. at 292. After discussing the eight part Utah test, which laid out the elements of a medical monitoring cause of action,[1] the Court, citing numerous cases, concluded that "[t]he other seven

---

[1] The eight part *Hansen* test requires Plaintiff to prove: (1) exposure; (2) to a toxic substance; (3) which exposure was caused by the defendant's negligence; (4) resulting in an increased risk; (5) of a serious disease, illness, or injury; (6) for which a medical test for early detection exists; (7) and for which early detection is beneficial, meaning that a treatment exists that can alter the course of the illness; (8) and which test has been prescribed by a qualified physician according to contemporary scientific principles. *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993). While these elements could conceivably form the basis for both an independent medical monitoring cause of action or the elements required to prove medical monitoring damages resulting from a different underlying tort (e.g. negligence), the *Hansen* court makes clear that this test is "the criteria necessary to maintain a *cause of action* for medical monitoring in Utah." (*Id*. at 978) (emphasis added).

states list similar requirements, and their cases often cross-reference each other." *Id.*  The only

Ohio case cited (and the only Ohio case cited in the entire medical monitoring analysis) was *Day*

*v. NLO*, discussed *supra,* which stated that medical monitoring is a form of damages and not an

independent tort. *Id.* at 292 n.74.  The Court then observed that there are "at least minor

differences among these eight states regarding what a plaintiff must show to obtain medical

monitoring." *Id*. at 292.

        Judge O'Malley did not actually make a final determination on how to address, if

at all, the differences in medical monitoring among the eight states.  Defendants argued that the

differences in medical monitoring law between the eight states should preclude class certification

because questions of law shared by the class would be outweighed by questions of law not

shared by the class members.  The Court did not agree, finding that Plaintiffs' proposal to create

"single-state subclasses" was "a reasonable mechanism to deal with...the relatively few state-to-

state differences." *Id*. at 293.  Accordingly, the Court adopted Plaintiffs' proposal and did not

make any final relevant  determinations on the medical monitoring laws of the eight states.

        Plaintiffs in the case at bar contend that *Welding Fume* implicitly recognizes a

medical monitoring cause of action in Ohio.  *Welding Fume* acknowledged that "medical

monitoring is recognized" in the eight relevant states, including Ohio.  Plaintiffs argue that

because the Court, after describing the Utah eight part test for an independent medical

monitoring cause of action, commented that "the other seven states [including Ohio] list similar

requirements," Ohio implicitly recognizes an independent medical monitoring cause of action.

        The Court rejects Plaintiffs' argument.  The *Welding Fume* court was well aware

of the distinction between medical monitoring as a cause of action versus damages.  "[T]he eight

states listed each recognize the primary aspect of relief sought by the . . . plaintiffs–medical monitoring–as *either* a cause of action *or* an item of damages.  *Id.* at 285 (emphasis added); *see also id.* at 284 n.14 (noting plaintiffs' explanation that though causes of action for medical monitoring were brought in all eight states, eight other claims were "meant only to provide as basis for recovery of medical monitoring relief, in those states where medical monitoring is a remedy and *not* a stand-alone cause of action") (emphasis added).  The "similar requirements" relate to proving the elements of medical monitoring, whether as an independent cause of action or a form of damages.  They were not meant to imply that the other seven states recognize a medical monitoring cause of action.  Thus, *Welding Fume* does not stand for the proposition that Ohio courts have recognized an independent cause of action for medical monitoring.  The Court concludes that there is no independent medical monitoring cause of action under Ohio law.

Anticipating that the Court might hold that no independent cause of action exists under Ohio law, Plaintiffs ask, in the alternative, that the Court create an independent cause of action for medical monitoring in Ohio.  The Court agrees with Defendant that creating an independent cause of action where one does not currently exist is a drastic step that the Court is not willing to take.  Medical monitoring is available as a form of relief.  Not recognizing a medical monitoring cause of action does not impact Plaintiffs' ability to pursue medical monitoring as relief under alternate causes of action.  Where neither the Ohio Supreme Court nor the Ohio legislature has provided guidance, the Court refuses to speculate on how these institutions would determine the issue of an independent cause of action.  No Ohio court or federal court applying Ohio law has acknowledged an independent cause of action; this Court sees no reason to be the first.  Accordingly, Defendant's motion to dismiss Plaintiffs' cause of

action for medical monitoring is granted.

### B.  *Strict Liability*

Defendant seeks to dismiss Plaintiffs' cause of action for strict liability on three grounds: (1) as a common carrier, CSXT is exempt from strict liability; (2) federal law governs and regulates the transportation of hazardous material, preempting Plaintiffs' strict liability claim under Ohio law; and (3) Plaintiffs have not adequately alleged Defendant's activity was abnormally dangerous and therefore have not alleged the necessary elements of a strict liability claim.

Plaintiffs, in their opposition to Defendant's motion to dismiss, only address the preemption issue.  They only respond to the abnormally dangerous activity argument in their sur-reply.  Plaintiffs never even bothered to address the issue of whether CSXT is exempt from strict liability as a common carrier.  The Court need not address the preemption and common carrier argument, however, since Plaintiffs have not alleged the elements of a strict liability cause of action.

Under Ohio law, which appears to follow the Restatement (Second) of Torts § 519(1) (1977), "one who carries on an abnormally dangerous activity is subject to [strict] liability for harm to the person, land, or chattels of another resulting from the activity, although he exercised the utmost care to prevent the harm."  *See Doherty v. Ohio State Univ.*, No. 89AP-746, 1990 WL 86772, at *6 n.1 (Ohio Ct. App. June 26, 1990) ("Although Restatement Section 519 has never been explicitly adopted by the court of Ohio, the rule nevertheless appears to be an accurate restatement of Ohio law on this issue.") (citations omitted); *Darton Corp. v. Uniroyal*

-8-

*Chemical Co., Inc.*, 893 F.Supp. 730 (N.D. Ohio 1995) (interpreting Ohio caselaw regarding strict liability and using the restatement's approach).

Section 519 "must be construed together with Section 520 which sets out six factors to be considered by the court in determining whether an activity is abnormally dangerous." *Doherty*, 1990 WL 86772 at *6. The six factors are: (1) "existence of a high degree of risk of some harm to the person, land, or chattels of others"; (2) "likelihood that the harm that results from it will be great"; (3) "inability to eliminate the risk by exercise of reasonable care"; (4) extent to which the activity is not a matter of common usage"; (5) "inappropriateness of the activity to the place where it is carried on"; and (6) "extent to which its value to the community is outweighed by its dangerous attributes." *Id. See also, e.g., Slack v. Fort Defiance Const. & Supply, Inc.*, No. 03AP-1268, 2004 WL 2806310 (Ohio Ct. App. 2004).

While Plaintiffs allege that "CSXT engaged in an abnormally dangerous activity rendering it strictly liable for any resulting damages," (ECF No. 39, Sec. Am. Compl. at ¶ 63) they have not alleged facts sufficient to state a claim for strict liability. Specifically, Plaintiffs have not alleged facts from which it can be inferred that Defendant's activity satisfies the six factors required for an abnormally dangerous classification.[2] At best, Plaintiffs have alleged facts suggesting, from only the most liberal construction, that the first two factors have been met. Moreover, Plaintiffs' allegations cannot possibly satisfy the strict liability requirement of inability to eliminate risk of harm by exercising reasonable care. Plaintiffs have brought a claim for negligence, necessarily requiring allegations that Defendant is liable because it failed to

---

[2]In their sur-reply Plaintiffs ask the Court to consider whether sufficient facts have been pled to establish these elements of a strict liability claim under Ohio law, yet they do not bring to the Court's attention a single fact pled in their Complaint suggesting that they have stated a strict liability claim.

exercise reasonable care.  Plaintiffs cannot allege that Defendant is liable for harm caused by not exercising reasonable care in conducting an activity while also alleging that the risk of harm of that activity cannot be eliminated by exercising reasonable care.  Plaintiffs' complaint does not "contain either direct or inferential allegations respecting all material elements to sustain a recovery" under a theory of strict liability.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  Plaintiffs' bare contention that CSXT engaged in an abnormally dangerous activity  is merely a conclusory allegation or legal conclusion masquerading as a factual allegation.  *Gilles v. Garland*, 281 Fed. Appx. 501, 502 (6th Cir 2008).  Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' strict liability claim.

### C. Negligence

Next, Defendant seeks to dismiss Plaintiffs' negligence claim.  In order to survive a motion to dismiss for failure to state a claim, Plaintiffs must sufficiently allege the elements of a negligence claim under Ohio law: (1) Defendant had a duty to Plaintiffs, (2) Defendant breached that duty, and (3) Plaintiffs suffered damages proximately caused by Defendant's breach.  *See, e.g., Menifee v. Ohio Welding Products*, 15 Ohio St. 3d 75, 77 (Ohio 1984).

In a submission to the Court dated September 23, 2008, Defendant admitted to the first two elements of Plaintiffs' negligence claim.[3]  (ECF No. 50 at 1.)  Therefore the Court must only examine the sufficiency of Plaintiffs' allegations regarding the third element:

---

[3]CSXT admitted that they were "required to install rail joint bars of appropriate dimensions for the rail in order for a rail joint to be structurally sound." (ECF No. 50 at 1).  Further, "a joint bar of the wrong dimension was installed on the rail joint near milepost QD 155.62 prior to the derailment and that the October 10, 2007 derailment near Painesville, Ohio was factually caused by a rail failure in the east end of the joint. Accordingly, CSXT will not contest the duty and breach elements of plaintiffs' negligence claims." *Id.*

proximately caused damages.

Defendant splits the representative Plaintiffs into two groups. The first group of six Plaintiffs have alleged some physical manifestation of injury purportedly resulting from exposure to the toxic substances released due to the derailment (the "injury" Plaintiffs). The remaining group of eleven Plaintiffs have not alleged any symptoms but have alleged exposure to potentially toxic materials arising from the derailment (the "no injury" Plaintiffs). Defendant challenges the sufficiency of the damages allegations as to the "no injury" Plaintiffs and the sufficiency of both the damages and causation allegations as to the "injury" Plaintiffs.

Defendant contends that the "no injury" Plaintiffs have not stated a claim because they do not have any physical injuries. Defendant further argues that allegations of exposure and potential injury do not give rise to a viable tort claim under Ohio law because they are not actual injuries.

As discussed *supra*, Ohio recognizes medical monitoring as a form of relief. CSXT's view that these eleven Plaintiffs have no injury ignores the theory at the heart of medical monitoring claims. As recognized in the ground-breaking medical monitoring case, *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 825 (D.C. Cir. 1984), an increased risk of disease and accompanying invasion of the interest in avoiding expensive diagnostic examinations is an injury in itself. Stated by a court applying Ohio law, which relied heavily on *Friends For All Children*, "[i]t is the combination of traditional tort policy of compensation for reasonable diagnostic procedures and the medical understanding of diseases with protracted latency periods that have led courts to order prospective medical monitoring." *Day v. NLO*, 851 F.Supp. at 880.

-11-

In assessing a claim that seeks medical monitoring as a form of relief, a court must determine what needs to be proven to satisfy the damages component of the underlying tort. While caselaw on the issue is not extensive, courts applying Ohio law have clearly found that no existing physical injury is necessary for medical monitoring.  *In re Welding Fume Products Liability Litigation*, 245 F.R.D. at 285 (finding that the laws of all eight states relevant to class action, including Ohio, "do *not* require that a plaintiff suffer an existing, physical injury to obtain medical monitoring") (emphasis in original).  *In re Telectronics Pacing System*, 168 F.R.D. at 216 (noting in a motion to reconsider class certification that "plaintiff need not prove a present, physical injury" in a medical monitoring damage claim).

While physical injury is not required to demonstrate damages entitling a plaintiff to medical monitoring relief, a plaintiff must demonstrate that because of defendant's actions, he has incurred an increased risk of disease or illness.  "It is sufficient for the Plaintiffs . . . to show by expert medical testimony that they have increased risk of disease which would warrant a reasonable physician to order monitoring."  *Day v. NLO*, 851 F.Supp. at 881.  *See also Hansen v. Mountain Fuel Supply,* 858 P.2d at 979 ( "Because the injury in question is the increase in risk that requires one to incur the cost of monitoring, the plaintiff need not prove . . . probability of actually experiencing the toxic consequences of exposure.  It is sufficient that the plaintiff show the requisite increased risk.").

Thus, a claim for medical monitoring relief must sufficiently allege that defendant's conduct created an increased risk of disease or illness.  Plaintiffs have met this burden in their complaint by sufficiently alleging all of the facts necessary to conclude that Defendant's conduct created an increased risk of illness or disease.  Toxic substances were

-12-

carried by CSXT's train. (ECF No. 39, Sec. Am. Compl. at ¶¶ 23-24.) Exposure to the toxic substances released into the atmosphere is associated with an increased risk of illness. (*Id.* at ¶¶ 27-30.) "Benzene is a known carcinogen associated with increased risk of leukemia" and "[p]hthalic anhydride exposure causes eye irritation, skin irritation, upper respiratory system irritation, conjunctivitis, nasal ulcer bleeding, cough, sore throat, wheezing, bronchitis, bronchial asthma, dermatitis, liver damage, and kidney damage." (*Id.* at ¶¶ 27-28.)

Plaintiffs allege in their Complaint that they " were exposed to [these] toxic substances, toxic fumes and carcinogens as a result of the Incident." (*Id.* at ¶ 33.)[4] Exposure was caused by Defendant's conduct. "As a direct and proximate result of Defendant's wrongful conduct as set forth above, Representative Plaintiffs and the Putative Class they seek to represent have been exposed to toxic substances, toxic fumes and carcinogens . . ."[5] (*Id.* at ¶ 45.) *See also Id*. at ¶ 20 ("As a result of the Incident, the Representative Plaintiffs and the members of the Putative Class were among the approximately 1,300 persons who were adversely exposed to, among other things toxic chemicals, toxic fumes and carcinogens, in their homes, businesses and places of employment.").

The Complaint alleges that because of their exposure to the toxic substances, Plaintiffs have an increased risk of disease requiring medical monitoring. "[Plaintiffs] have been exposed to toxic substances . . . and *thereby* suffer, and will continue to suffer a significantly increased risk of serious injury and diseases. This increased risk makes periodic diagnostic

---

[4]Defendant concedes in its reply to Plaintiffs' opposition that the complaint adequately alleges this exposure. (ECF No. 52, Def. Repl. Mem. at 3) ("[E]xposure alone is all the Complaint adequately alleges").

[5]As discussed, *supra*, Defendant has conceded its "wrongful conduct" by admitting that it owed a duty and breached that duty.

medical testing and examinations necessary." (*Id*. at ¶ 45) (emphasis added).

To summarize, Plaintiffs have sufficiently alleged that toxic substances were on the train and were released because of the derailment, they were exposed to these substances because of the derailment, the toxic substances are associated with increased risk of disease, and because Defendant's conduct caused them to be exposed to these toxic substances they face an increased risk of disease requiring medical monitoring. Since Plaintiffs' allegations must be accepted as true when analyzing a 12(b)(6) motion to dismiss, Plaintiffs have alleged injuries sufficient for a negligence claim seeking medical monitoring relief. Defendant's motion to dismiss as to these "no injury" representative Plaintiffs is therefore denied.

Defendant argues that the remaining six Plaintiffs, who have alleged a "manifestation of physical injury/symptoms," (*Id*. at ¶¶ 5-8),[6] do not sufficiently allege a causal link between their symptoms and the CSXT train derailment and that their injuries are *de minimis* and therefore not compensable. Because the Court has already held that the eleven "no injury" Plaintiffs have sufficiently stated a cause of action, these six "injury" Plaintiffs have obviously sufficiently stated a cause of action.

The only difference between the six "injury" Plaintiffs and the "no injury" Plaintiffs is that the "injury" Plaintiffs have manifested some physical symptoms. Otherwise, their allegations are identical. The sufficiency of the allegations relating to physical symptoms are irrelevant because the six "injury" Plaintiffs are not seeking any relief for these symptoms. Like the "no injury" Plaintiffs, they seek relief for an increased risk of illness. The Court has

---

[6]At the request of the Court, Plaintiffs filed a supplement to their Second Amended Complaint regarding the injuries allegedly suffered. (ECF Nos. 35, 37.)

already found that the "no injury" Plaintiffs have sufficiently alleged damages and causation.

The Court must also hold that the "injury" Plaintiffs have sufficiently alleged damages and

causation.  Accordingly, the motion to dismiss must also be denied as to the six "injury"

Plaintiffs.


**D.  Punitive Damages**

Defendant moves under Federal Rule of Civil Procedure 12(f) to strike Plaintiffs'

request for punitive damages.  Defendant argues that under Ohio law, punitive damages are not

available in the absence of compensatory damages.  Plaintiffs reply that the medical monitoring

request for relief is "akin to compensatory damages" and therefore does not preclude an award of

punitive damages.

Plaintiffs have asked the Court "[f]or declaratory, injunctive and/or other

equitable relief which orders Defendant to provide and/or pay for the judicial establishment,

oversight, supervision and participation of a medical monitoring program . . ."  (Compl. at 16, ¶

7.)  No request for compensatory damages has been made; the only form of monetary damages

Plaintiffs have asked for is punitive damages.  Moreover, Plaintiffs seek class certification under

Federal Rule of Civil Procedure 23(b)(2) which applies to situations where "final injunctive

relief or corresponding declaratory relief is appropriate."

Under Ohio law, a medical monitoring prayer for relief is deemed injunctive

when the court is involved in the administration of the medical monitoring program. *Wilson*, 817

N.E.2d at 65 ("[c]ourt supervision and participation in medical-monitoring cases is a logical and

sound basis on which to determine whether the action is injunctive.").  *See also Day v. NLO,*

*Inc.*, 144 F.R.D. at 335-36 (classifying court established medical monitoring programs financed by defendants as injunctive).  Given that Plaintiffs have asked the court to be involved in a medical monitoring program and that in their own complaint they have characterized their prayer for relief as equitable, Plaintiffs' request for a medical monitoring program is injunctive.

The Court then must determine whether Ohio law permits punitive damages awards when equitable relief is sought.  Defendant, citing a list of Ohio cases, argues that punitive damages are not available in the absence of compensatory damages.  The cases Defendant cites apply only to the issue of whether punitive damages can be awarded when there are no compensatory damages; they do not address whether punitive damages can be awarded with equitable relief.

However, Plaintiffs have not cited, nor has the Court found, a single Ohio case awarding punitive damages in correspondence with equitable relief.  Plaintiffs' citation of New York and Connecticut caselaw is not relevant for determining whether their punitive damages claim is permissible under Ohio law.  As with the issue of an independent medical monitoring cause of action, the Court deems it inappropriate to create new Ohio law where more knowledgeable institutions like Ohio courts and the Ohio legislature have not provided any guidance.  Accordingly, Defendant's motion to strike Plaintiffs' request for punitive damages is granted.

## IV.  CONCLUSION

For the reasons discussed *supra*, Defendant's Motion to Dismiss Plaintiffs' medical monitoring and strict liability claims and Defendant's Motion to Strike Plaintiffs'

-16-

request for punitive damages is GRANTED, and Defendant's Motion to Dismiss Plaintiffs'

negligence claim is DENIED.

**IT IS SO ORDERED.**

> _/s/Dan Aaron Polster     October 22, 2008_
> **Dan Aaron Polster**
> **United States District Judge**